THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **NAJEE ABDUL-HAKIM,** *Plaintiff,* v. **SCHNEIDER NATIONAL CARRIERS, INC.,** *Defendant.* | Case No. (Hon.:) **COMPLAINT AND JURY DEMAND** |

# COMPLAINT

Plaintiff **NAJEE ABDUL-HAKIM**, by and through his attorneys, CAIR Legal Defense Fund, brings this action against Defendant **SCHNEIDER NATIONAL CARRIERS, INC.** ("Schneider"), a corporation headquartered in Wisconsin, for compensatory and punitive damages, declaratory and injunctive relief, pre-judgment and post-judgment interest, and costs and attorneys' fees for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, committed when Schneider discriminated against Mr. Abdul-Hakim due to his religion, denied his request for a religious accommodation, and retaliated against him for requesting the religious accommodation.

## INTRODUCTION

1. Title VII of the Civil Rights Act requires employers to respect religious freedom, including reasonably accommodating employees' religious beliefs and practices in the workplace.

2. When Najee Abdul-Hakim, a devout Muslim man who maintains a beard in accordance with his Islamic faith, applied for a truck driver position with Schneider, the company

mandated that he undergo a drug screening process that required he provide hair follicles by shaving his beard to a length that would violate his sincerely-held religious beliefs.

3. The beard must be approximately fist-length. Trimming his beard to a length shorter than fist-length violates Mr. Abdul-Hakim's sincerely-held religious beliefs and, accordingly, he requested a religious accommodation from Schneider.

4. Despite that request for a religious accommodation—and the existence of a Drug/Alcohol Abuse Policy that states that hair can be collected from several alternative parts of an employee's body— Schneider told Mr. Abdul-Hakim he was required to shave his beard for the test, considered his refusal to shave as a refusal to test, and denied him employment as a result.

5. Schneider argues that Mr. Abdul-Hakim did not require a religious exemption and that Mr. Abdul-Hakim refused to explore any alternative options. But Schneider has no basis for these claims and accusations, which ring especially hollow given that Mr. Abdul-Hakim secured a truck driver position two months after the incident at a large transport and logistics company, similar to Schneider, where he provided a hair sample from his arm to fulfill the drug test requirement.

## **JURISDICTION**

6. Plaintiff's claim for discrimination on the basis of religion in violation of Title VII of the Civil Rights Act of 1964 is brought under 42 U.S.C. § 2000e-5.

7. This Court has original federal question jurisdiction over Plaintiff's claims of violations of Title VII of the Civil Rights Act of 1964 pursuant to 28 U.S.C. § 1331.

8. The Court has personal jurisdiction over Defendant because Defendant is headquartered in Green Bay, Wisconsin and conducts business in this judicial district.

9. Venue lies in this district pursuant to 28 U.S.C. § 1391 as to Defendant because Defendant operates in and maintains its principal place of business in Green Bay, Wisconsin.

10. Plaintiff's claims for attorneys' fees and costs are predicated upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2(m) and Fed. R. Civ P. 54.

## PARTIES

11. Plaintiff, Mr. Abdul-Hakim, is a devout and practicing Muslim man.

12. On October 21, 2019, he was selected to attend a paid four-day orientation and training session with Schneider in Carlisle, Pennsylvania. Upon the successful completion of the training, he was to immediately begin his employment at Schneider.

13. Defendant Schneider is a national motor carrier and employer within the definition of Title VII. Schneider offered Mr. Abdul-Hakim a conditional offer of employment.

## FACTUAL ALLEGATIONS

14. Mr. Abdul-Hakim is a practicing Muslim man.

15. The Qur'an and the Sunnah comprise the primary teachings of Islam. The Qur'an is considered by Muslims to be the direct word of God revealed to Islam's prophet, Prophet Muhammad. The Sunnah describes the words and actions of the Prophet Muhammad, inspired by God. In other words, the Sunnah contains the teachings of the Prophet Muhammad. These teachings are narrated through the Hadith, a collection of traditions containing sayings of the Prophet Muhammad.[1]

---

[1] Dr. Emad Hamdeh, Yaqeen Institute, *Are Hadith Necessary? An Examination of the Authority of Hadith in Islam* (October 25, 2019), https://yaqeeninstitute.org/read/paper/are-hadith-necessary.

3

16. According to the Hadith, as narrated by Ibn Umar, the Prophet stipulated, "Cut the moustaches short and leave the beard."[2]

17. Thus, like many Muslim men, Mr. Abdul-Hakim has a sincerely-held religious belief that he must maintain a beard of approximately fist length. He is permitted to groom and trim the ends of the beard, so long as it remains at fist length.

18. Mr. Abdul-Hakim believes it is a sin to shave his beard below fist length, as required by Defendant's hair follicle drug test.

19. Mr. Abdul-Hakim applied for a truck driver position with Schneider National, Inc., a transportation and logistics company.

20. Mr. Abdul-Hakim met the qualifications for the truck driver position, including possessing a commercial driver's license at the time of his application.

21. Schneider provided Mr. Abdul-Hakim a conditional offer of employment on or around October 8, 2019.

22. The conditional offer of employment was contingent upon completion of a (i) Department of Transportation (DOT) Physical, (ii) DOT Pre-Employment Drug Screen and Pre-Employment Hair Collection Drug Screen, (iii) all background checks and paperwork requirements, (iv) successful completion of orientation/training, which includes a physical ability test.

23. Mr. Abdul-Hakim was selected to attend a paid four-day orientation and training session with Schneider in Carlisle, Pennsylvania, starting on October 21, 2019.

24. Upon successful completion of the orientation, Mr. Abdul-Hakim was to immediately begin his employment, receive a truck, and assigned transport routes.

---

[2] Jami` at-Tirmidhi 2763, Book 43, Hadith 33

25. On the first day of orientation, Mr. Abdul-Hakim was asked to fill out the required corporate paperwork and undergo a drug screening test. To complete the drug screening, Mr. Abdul-Hakim was asked by a nurse at the orientation site to provide a hair sample.

26. Section XII. Section XII. Company Hair Testing of the Schneider National, Inc. Drug/Alcohol Abuse Policy provides that "All applicants will be required to pass a NON-DOT hair follicle test prior to hauling a load."

27. Mr. Abdul-Hakim did not, at the time of his drug test, have hair on his head, and the nurse told him that to comply with the requirement he must shave a part of his beard.

28. The amount of hair that the nurse required Mr. Abdul-Hakim to shave off would have made it so that his beard was less than fist-length, and violated his Islamic obligations.

29. Section XII. Company Hair Testing of the Schneider National, Inc. Drug/Alcohol Abuse Policy provides that individuals "citing religious practices that do not allow them to cut their hair, will be accommodated by collecting hair from other areas such as from arms, legs, chest, or underarm."

30. The policy also accommodates for individuals without head hair providing that "[b]eard, mustache, arm hair, leg hair, chest hair, or hair from the underarms may be collected. If there is insufficient body [hair], the driver will be allowed 45 days to allow enough hair growth for a sample."

31. At no point did the nurse make Mr. Abdul-Hakim aware of the policy allowing for a 45-day period of time to grow hair for a sample.

32. Mr. Abdul-Hakim told the nurse that he held a sincere religious belief under which he was not permitted to shave his beard.

33. Mr. Abdul-Hakim requested a religious accommodation where, instead of shaving his beard, he would provide hair samples from other parts of his body in order to successfully conduct the drug screening.

34. The nurse insisted that the hair must be taken from the beard for the test and escalated the matter to her supervisor.

35. The nurse made a phone call to someone whom Mr. Abdul-Hakim understood to be a female, Schneider human resources representative. She placed the call on speaker.

36. The HR representative asked Mr. Abdul-Hakim what his religion was, and he responded that he was "Muslim."

37. The HR representative also asked Mr. Abdul-Hakim about his denomination, to which he responded that he was "Sunni Muslim."

38. The HR representative responded that Schneider does not recognize that religion, and so, Mr. Abdul-Hakim was required to shave his beard.

39. The nurse told Mr. Abdul-Hakim that she would mark his refusal to provide hair from his beard as a refusal to take the drug test.

40. Mr. Abdul-Hakim reiterated his sincerely-held religious beliefs and offered hair from any other location on his body, such as his mustache, head, throat, and neck area, to no avail.

41. The nurse marked that Mr. Abdul-Hakim refused the drug test and left the room.

42. A male Schneider representative approached Mr. Abdul-Hakim and asked him to wait in the hallway while Schneider representatives deliberated.

43. While waiting in the hallway, Mr. Abdul-Hakim met a Sikh individual who, like Mr. Abdul-Hakim, had a sincerely-held religious belief prohibiting from providing hair from his

beard. He informed Mr. Abdul-Hakim that he was able to provide hair from his arm for the drug test.

44. Following deliberation, the male Schneider representative escorted Mr. Abdul into an office where Schneider indicated to Mr. Abdul-Hakim that he should leave and offered him a Greyhound bus ticket home, even though Schneider had paid for Mr. Abdul-Hakim's plane ticket to the orientation.

45. Following his ordeal, Mr. Abdul-Hakim secured a truck driving position with a different company. He completed a drug test and provided a hair sample from his arm.

46. Schneider falsely stated that Mr. Abdul-Hakim refused to undergo the drug screening process and as a result denied him employment.

47. Schneider discriminated against Mr. Abdul-Hakim due to his religion, denied his reasonable request for religious accommodation, and retaliated against him for requesting the accommodation by denying him employment.

## **ADMINISTRATIVE HISTORY**

48. Mr. Abdul-Hakim timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission against Schneider on August 10, 2020 and received a Notice of Right to Sue on September 27, 2023.

49. The EEOC determined that "there is reasonable cause to believe Respondent failed to provide Charging Party with an effective religious accommodation and terminated his employment because of his religion in violation of Title VII."

50. The EEOC further found that:

> The record shows Charging Party was on location for Respondent's first day of orientation on or around October 21, 2019, for a Truck Driver Position. Charging Party has a sincerely held religious belief as covered by Title VII. Respondent requested that Charging Party submit to their pre-employment drug screen and pre-employment hair collection drug

screen. As Charging Party did not have hair on his head, Respondent's third-party nurse requested a hair sample from Charging Party's beard. Charging Party denied this request, as it would violate his sincerely held religious belief, and offered a hair sample from other parts of his body, including his chest. Respondent's third-party nurse escalated the matter to representatives of Respondent, who were informed of Charging Party's religion, and request for a hair sample to be retried from another part of his body other than his beard because of his religion. Respondent marked Charging Party as refusal to participate in the testing process, which ended Charging Party's employment.

51. Accordingly, Mr. Abdul-Hakim has exhausted his administrative remedies, as required by Title VII.

## CLAIMS FOR RELIEF

### Count I

**Discrimination on the Basis of Religion – Failure to Accommodate in Violation of Title VII of the Civil Rights Act of 1964**

52. Mr. Abdul-Hakim realleges and incorporates the allegations throughout the Complaint.

53. Schneider violated Title VII by refusing Mr. Abdul-Hakim's reasonable religious accommodation request to provide an alternative hair sample.

54. Schneider knew of Mr. Abdul-Hakim's need for a religious accommodation for his beliefs.

55. Schneider failed and refused to provide Mr. Abdul-Hakim with a reasonable accommodation for his beliefs, even though a reasonable accommodation was requested, available, provided in Schneider's policies, and could have been made without any undue hardship.

56. Instead, Schneider marked Mr. Abdul-Hakim's refusal to violate his sincerely held religious belief as a refusal to complete the hair follicle drug test and, as a result, denied him employment.

57. Schneider did not have a legitimate business purpose for denying Mr. Abdul-Hakim's religious accommodation request.

58. Schneider's actions in refusing to provide Mr. Abdul-Hakim with a reasonable accommodation for his sincerely-held religious beliefs constitute discrimination on the basis of religion in violation of Title VII.

59. As a result of Schneider's unlawful actions, Mr. Abdul-Hakim has suffered a loss of earnings, wages, seniority and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress, and related damages.

60. Schneider acted with malice and reckless indifference to Mr. Abdul-Hakim's protected rights.

## Count II

### Failure to Hire on the Basis of Religion in Violation of Title VII of the Civil Rights Act of 1964

61. Mr. Abdul-Hakim realleges and incorporates the allegations throughout the Complaint.

62. Schneider engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(j) and 2000e-2(a), as amended, by engaging in intentional discrimination against Mr. Abdul-Hakim on account of his religion.

63. Schneider intentionally discriminated against Mr. Abdul-Hakim by refusing to hire him because of his religion and his sincerely held religious belief requiring him to not shave his beard.

64. Schneider claimed that it did not recognize Mr. Abdul-Hakim's religion.

65. The effect of Schneider's discrimination against Mr. Abdul-Hakim was to deprive him of equal employment opportunities, including, but not limited to, causing him not to be hired, and otherwise adversely affecting his status as an employee because of his sincerely held religious beliefs, in violation of Title VII.

66. Schneider acted with malice and reckless indifference to Mr. Abdul-Hakim's federally protected rights in discriminating against him because of his religious beliefs in violation of Title VII.

67. As a result of Schneider's unlawful actions, Mr. Abdul-Hakim suffered a loss of earnings, wages, seniority and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress, and related damages.

### Count III

**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**

68. Mr. Abdul-Hakim realleged and incorporated the allegations throughout the Complaint.

69. Mr. Abdul-Hakim engaged in protected employment activity when he requested a religious accommodation.

70. Schneider violated Title VII by retaliating against Mr. Abdul-Hakim by considering the observance of his religious beliefs a refusal to complete the required drug screening and terminating his employment.

71. But for Mr. Abdul-Hakim's request for religious accommodation, Schneider would not have retaliated against him.

72. Schneider refused to provide alternative testing methods and falsely stated that Mr. Abdul-Hakim refused to undergo the drug screening process as a pretext to terminate his conditional offer of employment.

73. As a result of Schneider's unlawful actions, Mr. Abdul-Hakim suffered from a loss of earnings, wages, seniority and benefits, a loss of earning capacity, a loss of future earnings, a loss of enjoyment of life, embarrassment, humiliation, emotional distress, and related damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Honorable Court enter judgement in his favor and against Defendants, on each and every count in this Complaint, and enter an Order awarding the following relief:

1. Payment for all economic damages, including but not limited to, back pay and benefits, front pay and benefits (in lieu of reinstatement);

2. Payment for non-economic damages, including emotional harm;

3. Punitive damages;

4. Statutory damages;

5. An award of attorneys' fees, costs and expenses of all litigation; and,

6. Any further relief to which Plaintiff is entitled or that this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of the above-referenced causes of action.

**CAIR LEGAL DEFENSE FUND**
Lena F. Masri (WIED: 1000019)
lmasri@cair.com
Gadeir I. Abbas (WIED: 81161)*
gabbas@cair.com
Zanah Ghalawanji (DC: 90013956) α
zghalawanji@cair.com
453 New Jersey Ave SE
Washington, DC 20003
Email: LDF@cair.com
Ph: 202-742-6420

**CAIR-OHIO**
Lina Abbaoui α
4985 Cemetery Rd
Hilliard, OH 43026
Email: Labbaoui@cair.com
Ph: 614-982-0879

\*Licensed to practice in VA, not DC. Practice limited to federal matters.

α Admissions application forthcoming.

*Counsel for Plaintiff*

Dated: December 21, 2023